Case number 19-6461 USA v. Walter Powell or arguments not to exceed 15 minutes per side Ms. Kelly A. Kolka for the appellant May it please the court my name is Kelly Kolka and my co-counsel Rula Alush and I represent the appellant I've reserved three minutes for rebuttal Sure well The issue in this case is whether the warrantless search of Mr. Powell's motel room conducted with the express permission and supervision of Lexington police violated Mr. Powell's Fourth Amendment right to privacy the government argues that Mr. Powell had been evicted at the time Eugene Dita entered into his room and that the subsequent search was merely conducted in the presence of Lexington police but the undisputed facts of the record do not support the government's position and require that the court reverse As to the second issue presented in our briefing the Havis issue we are mindful of the court's recent decision in Garth and in Thomas and we understand that this panel cannot depart from those decisions so we would simply reserve the issue and rest on our brief The undisputed facts establish that Lexington police had knowledge of and participated in the search of Mr. Powell's motel room and Eugene Dita had the requisite intent to assist them First Lexington police performed a protective sweep of Mr. Powell's motel room notably they did so absent any articulable danger as in fact Miss Dita had only gone to the room 15 minutes prior unaccompanied. Next after they finished their protective sweep they supervised the search that Eugene Dita began and to be clear this was not an eviction but indeed it was actually a search of the premises because at no point did Eugene Dita begin to gather the belongings of the guests therein and began her search beginning with the restorator but she testified that she was searching Yeah I mean the police didn't ask her to do the search did they I mean they didn't direct her I mean it's not one of these cases where they're where um the hotel people are helping the police at their direction I mean she called them they're they're present for sure but what how are they I mean are they how are they actively participating or directing her in any way Well your honor I would agree that they are present and they did not direct her but they gave her express permission at the moment she asked them well she did excuse me I don't think she requested their permission to search she called them as I understand the record in order to make sure that there wasn't any difficulty from the individual who'd rented the room while she was searching that that is he or or others might you know associated with the room might return and create trouble isn't that the reason the police were summoned to the scene Your honor to that point there are a few reasons the police were summoned to the scene yes Eugene Dita maintains that she called police for for safety purposes but she also testified that she smelled marijuana knew that it was illegal and figured she called police she also testified that she wanted police to smell what she was smelling in case the guests were to challenge her on the smoking fee so you know while she testified that it was for purposes of the safety sweep she also went to the guest room 15 minutes prior unaccompanied and knocked on the door without any regard to whether there would be somebody dangerous inside and there's no evidence in the record that the circum that the circumstances changed now she did request their permission to take the package out of the refrigerator and that's where we we run into an issue um the district court made a fact finding uh that is clear air it's not supported by the record the district court found that Eugene Dita took the package out of the fridge on her own volition but when asked whether it was her decision to take the package out of the fridge she unequivocally said no i don't think it was my decision i gave them the decision and when pressed she doubled down on this testimony and when asked what she would have done had they instructed her to leave the package where it was she testified i would have left it finally at the end of the suppression hearing they asked what her state of mind was uh when they told her she could take the package out of the fridge and she testified that she was thinking okay take the package out of the package out of the fridge um i would also submit that she wanted would not have actually entered the room as well because she went to the room 15 minutes prior and chose not to enter at that time despite that there was no evidence anybody was inside so because she had lexington police at her side uh she went ahead and conducted a search and entered that room with lexington police now as to um the level of what's your position as to why miss zito went to the right i think she indicated the reason was that she wanted to confirm that uh smoking had been going on in there and uh to gather evidence of the smoking so that she could assess a 200 damages fee and um because and i mean further that she had the understanding that the smoking was in violation of hotel policy that was really the reason she went there was it not or at least that's what she said that that's what she said she did testify to that but bear in mind she also testified that she wanted police to also smell what she was smelling and that she knew marijuana was illegal and that's why she should call police um but but as to whether or why she actually conducted that search um yes it was allegedly to justify a a smoking state but when asked what she would have done if she instead found white powder she testified well that could be evidence of snorting so she's not trying to justify a smoking fee if she's looking for evidence of illegal activity and in fact that's what she testified she was looking for she in fact testified she was looking for evidence of illegal activity on the other hand if hotel management comes to the room and there's the scent of marijuana um smoke um at that point it would be reasonable for them to search the room to see if there are any other violations uh of hotel policy don't you think i would agree with that premise in isolation and i think that's exactly what we have in spicer if we were to look at the spicer case their uh motel cleaning staff smell marijuana entered the room believing that it was on the to clean list and observed marijuana called management invited management into the room management smelled and saw drug paraphernalia continue to search and even searched mr spicer's backpack it was at that point then that she called police she didn't have police conduct that search with her she did it independently and then actually evicted the tenant prior to calling police because recall in spicer the sixth circuit determined that uh mr spicer was not yet evicted until you or until the motel manager actually rekeyed his motel room so she divested him of that ability to re-enter that room and his lawful right to be in that room it's here we have i'm sorry no go ahead your honor of course in this case the search was as an agent of the police or in concert with them um it doesn't matter whether your client had a expectation of privacy because there's no no state action involved so um do we have to get in if if we conclude that uh this this was a search initiated and carried out by the hotel do we have to get into anything about uh your client's expectation of privacy or lack of expectation of privacy in the world well your honor i think you have to find both you have to find that mr powell had a reasonable expectation of privacy um which i think is very clearly demonstrated by alan very clearly demonstrated by spicer um and you also have to find that the search was in fact a search and eugene vito was a government agent but to that point i would point your honor to both cases lambert and howard um howard controls in this instance it's that 85 case um where both police and an insurance agent were investigating the charred remains of the howards home um police conducted an unlawful search and it was properly excluded but the insurance agent also conducted a simultaneous search of the premises and that was admitted into evidence now the court found that uh the the police uh were present for and had knowledge of the um the insurance agent search and in fact even participated in that and i think we have just that here we have um an instance where police are present police must certainly have knowledge of the search and police participated when they gave eugene z to express permission to take the package out of the fridge i would i thought in howard the insurance investigators whatever the insurance investigator derived was okay right because that wasn't he wasn't an agent of the police because he was conducting his own independent investigation for his own purposes why does that case not support the government here the hotel manager is conducting a search for her own purpose which is to assess this 250 smoking fee uh and the and the police are are present but i mean it doesn't seem like that that that the presence alone is anything and if anything the insurance investigator and the hotel manager here are similarly situated i i see i'm running short on time may i answer your question and the prong that the police participated in the search was met but in howard the insurance agent was not deemed um a government agent because he didn't have the requisite intent so because that first prong was met it supports our case uh but as to the intense piece uh the distinction here is that the insurance agent had a lawful reason to be on that premise and he had a duty that he because she had failed to evict him the circuit is clear uh hotel management has no authority to enter except for routine house for uh housekeeping purposes or with the occupant uh consent rider of that happened here she had no lawful reason but to that end she made a decision i thought she had made a decision to evict him i thought all we looked for is a decision to evict isn't am i wrong about that i mean i understand that you can manifest it by re-keying the room or doing something else but it seems to me that we've said uh at least she said that she had made a decision and in one of the cases i can't remember maybe it's fast at least we say there was no decision made implying that if you have made a decision and you're going up there and here she's trying to gather evidence for the fine not because she's already decided to kick him out right i mean the fine is different but kicking him out she'd already decided sure i'm out of time may i continue with answering your honor's question yes may i answer the question okay thank you um the decision is a subjective intent and bass actually tells us that no we cannot rely on the subjective intent of the motel management in an eviction you need an affirmative step toward repossessing the room and asserting dominion or control over it in fact the bass decision in its footnotes cites to alan where they find that the clear unmistakable indication of the hotel's eviction of its guests is present is present in alan but absent in bass and it's absent here too your honor um for these reasons eugene vita failed to evict mr powell before she entered the room with police and conducted a search with uh the los angeles police's assistance therein and as a result we would respectfully request that the court uh the court um vacate mr powell's eviction or conviction and uh reverse the decision of the district court thank you all right you're from opposing council mr keebler okay may it please the court david keebler on behalf of the government the standard in the sixth circuit is justifiable affirmative steps to repossess the room once a hotel employee takes affirmative steps to repossess the room even if unsuccessful the right to privacy is terminated in this case eugene zita performed a long string of affirmative steps to repossess the room she initially knocked on the door to try to evict uh mr powell prior to calling the police she detected the odor of marijuana testified that it was extremely strong or that it was strong and she was concerned that the individuals inside were dangerous she called police for safety she produced a master key uh keyed into the room while the police were there only to make sure the circumstance didn't get out of hand she once she was inside the room she began gathering up the trash gathering up the belongings and began inspecting for a 250 fine that she was going to assess in conjunction with evicting mr powell so she took numerous affirmative steps uh depriving his mr powell's right to privacy and standing to challenge i agree with you judge clay that this court doesn't need to reach that issue if this court were to conclude that the hotel employee was not an agent of the government and i think that the record certainly indicates that she was not an agent of the government she the government must have instigated or participated in the search officer that testified at the suppression hearing was quite clear this was just a routine call he was only there to ensure that any potential interaction with the guest inside didn't get out of hand because he's been on these instances these evictions 50 or so times before and sometimes people get upset so there was no participation nor instigation as the court found their actions were recorded on body camera and there was no suggestion or request that misita searched the hotel room and as misita testified her actions were entirely independent of the government's intent to collect evidence the government wasn't there to collect evidence and her misita's intent at that point was to collect evidence of smoking mr powell's counsel brought up the illegal activity or evidence of marijuana quote that is laid out in the record and the government's brief what she fully said when she was asked why do you care when you're looking for evidence of smoking whether there's illegal activity or marijuana and she stated so that they have evidence to charge the guest the penalty for smoking in the room she further stated that sometimes the guests fight these penalties and they they contest them with the credit card company so she goes through and tries to take photographic evidence of the so on both prongs of the agency determination she was not an agent of the government she was trying to find evidence of smoking and the police were simply there to supervise the eviction process in the event that someone may have been in the room or in the event that someone what do we do what do we do with the exact moment when she asks them about the refrigerator and whether she can take that out of the refrigerator i mean why isn't the why isn't the why aren't the police at that exact moment participating and directing her such that that's us that that's a police search because if you look at the totality of the circumstances the police are standing at the door supervising an eviction while misita is in there looking for evidence of smoking and it's merely a recitation of each role when misita says there's something in the refrigerator can you look or can i take it out she's standing at the refrigerator asking that question the police officers are in the door jam area or in the hallway area and they're simply saying yeah you can you're the hotel employee you're you're evicting these people this is not a government search this is not a elaborating a little bit on what was said to suggest what was meant right all those words weren't saying right correct your honor correct simply the words that were said were just one officer said you can and one officer said you can take it out and given the circumstances which were in the record that she's in the room she testified that she is looking for evidence of evicting these individuals removing the trash removing their belongings while the government is while the police officers are standing at the door those circumstances support the district court's finding that there was no search there and that the words you can or you can take it out did not rise to the level of encouragement additionally uh mr powell brought up uh that the police were the reason that the police were at the scene the police were at the scene to supervise the eviction misita testified that she the room initially to try to evict the individuals and was unsuccessful and then after she was unsuccessful believing that these individuals may be dangerous summon the police to supervise the eviction so in summary unless the court has uh what was the what is the justification for the he I take it there's no independent challenge to that but did if he if he had an expectation of privacy in the room at the time why were they allowed to go into the room to make that well I don't think I don't believe they would have an expectation of privacy after they're evicted and so well everything yeah but assuming that there's not enough for the eviction the agent I understand the agency argument it doesn't matter whether he's evicted or not you you know would prevail but what about the the fact that they were in that they were actually in the room and wouldn't wouldn't that be problematic if he hadn't been evicted I don't think it would be problematic given the brief nature of a very limited protective sweep and then retreating back to the doorframe doesn't it matter what the purpose of the protective sweep was I think it's certainly a factor that that is important they were there to protect they knew what the officer testified is that some people get upset during this eviction process and he also said that he didn't want her to go in I believe he said something to the extent of he didn't want her to go in and get jumped or or someone be hiding behind the door when his partner went in so they did the brief protective sweep not to conduct any investigation and not to do anything further but simply to ensure there was going to be no issue no threat to either the hotel employee or the police officers like eviction procedures like a community caretaker exception type thing like one of those exceptions community caretaking are you that's one of those except fourth amendment exceptions that sometimes applies although I think it's controversial about whether it allows you to go into somebody's house sure and I think that this would be I guess privacy would be slightly different than the level of your home because you're simply renting a hotel room for a period of time and you're you know the more the bank would ostensibly not come in to repossess your home for smoking in it counsel do you want to just rely on your brief for the career offender issue um yes your honor my brief as well as the 28j letter that I filed citing the Garth as well as Thomas cases I can briefly speak on that but the Havis court held that attempts no longer qualify however in this case the predicate convictions in Michigan Walter Bowles Mr. Bowles predicate convictions that statute 333 7401 the least culpable conduct in there is attempted transfer of a controlled substance and the Thomas court specifically held that uh or the Thomas the Thomas case specifically held that attempted transfer as a completed delivery or as a completed crime so we no longer I don't believe that that issue is in dispute any further thank you thank you sure any rebuttal you're having an audio problem here you're on mute my apologies I'm sorry your honor yes brief rebuttal um I would simply point out that the government agency test has an objective standard and a subjective standard or subjective component rather um and it is knowledge of the police or participation in the search which I think is demonstrated by objective facts and then the private actor's intent in helping the police and that is a subjective analysis that we look at as to the objective facts in this case she asked Lexington police for permission to take the package out of the fridge and they affirmatively told her she could that is an objective fact in the record and we cannot conclude anything but police knew about the search they were present during it and they participated by giving her express permission to carry it through and then the subjective intent can only be demonstrated by Eugene Zita and her intent was clear in her testimony that no she does not believe it was her decision to take the package out of the fridge she gave that decision to Lexington police under Howard again knowledge is sufficient how do we distinguish between whether she was acting whether she was requesting permission from the police or whether she was simply checking with them to make sure they had no objection I think that's the same I mean your honor if she were in fact looking for evidence to justify a smoking fee she does not need to ask police permission to do that and I don't think she asserts that she does but when she saw something in the fridge something um triggered for her that she ought to ask police whether or not she could take the point she became a government agent if she truly believed that she could do this as a private search um and if government or and if the police truly believe that she could continue this as a private search they should have stepped out of the room after they realized nobody was in the room but again she would not have asked for express permission from Lexington police if she had no intent to assist them and at that point and moving forward she was uh acting at the express permission and instruction of police um because again she says she continued her search looking for evidence of illegal activity after that point um so again we would ask that the court uh vacate Mr. Powell's conviction and remand and reverse the decision of the district court to deny the motion of the crime thank you um thank you uh something further uh the case uh is uh submitted